UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DIANE CHERYL SPREADBURY | ) | Case No. 08-14288-SSM |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |
| MICHELLE E. SPREADBURY, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1254 |
| | ) | |
| DIANE CHERYL SPREADBURY, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant Peter Spreadbury to dismiss the complaint for failure to state a claim for relief, or, in the alternative, to grant summary judgment (Doc. # 8). The plaintiffs are four of the adult children of debtor Diane Cheryl Spreadbury and her former husband Peter Spreadbury. They allege breach of fiduciary duty with respect to an irrevocable trust created in connection with the purchase of a 100-acre parcel of land located in Fauquier County, Virginia, known as Westbury Farm. As it turns out, title to Westbury Farm was formally taken in the name of an entirely different trust, which ultimately transferred it to still a third trust of which the parents are sole beneficiaries during their lifetimes. Among other relief, the children seek imposition of a constructive trust against Westbury Farm for their benefit or for the benefit of the trust in which they have a beneficial interest.

1

Background

Diane Cheryl Spreadbury filed a voluntary petition in this court on July 21, 2008, for reorganization under chapter 11 of the Bankruptcy Code. On her schedule of assets, she listed $5,567,900 in real property and $14,798 in personal property. The most significant asset was a house and 100-acre parcel of real estate located at 1749 Atoka Road, Middleburg, Virginia, which the parties refer to as Westbury Farm. The debtor valued the property at $4,655,900, subject to a deed of trust in the amount of $1,027,023. Although the debtor initially remained in possession of her estate as debtor in possession, the court ultimately ordered the appointment of a chapter 11 trustee. A plan has not yet been confirmed.

At the time the chapter 11 petition was filed, a divorce case had been pending between the debtor and Mr. Spreadbury for approximately four years in the Circuit Court of Fauquier County, Virginia. After this court lifted the automatic stay to allow the divorce case to proceed, trial was held on February 2, 2009. The state court judge issued a letter ruling on February 20, 2009, and a final order of divorce implementing that ruling was entered on April 16, 2009. Relevant to the present litigation, Westbury Farm and its mortgage were apportioned 35% to the debtor and 65% to Mr. Spreadbury. The debtor had the right for 90 days to buy out Mr. Spreadbury's interest based on a valuation of $7,000,000 which the state court fixed for the property. If the debtor did not do so, the property would pass to the attorneys for the parties as special commissioners of sale.

A significant complication to the sale of the real estate is the assertion by four of the adult children of the debtor and Mr. Spreadbury—Andrew Weston Spreadbury, Kathryn Kimbel

Biehle, Michelle E. Spreadbury and Whitney Weston Spreadbury[1]—that the Atoka Road property was improperly transferred in 1999—in exchange for a $340,000 promissory note due in 30 years and "secured" by an unrecorded deed of trust—from an irrevocable trust in which the debtor and Mr. Spreadbury had only a 22-year income interest and the children had the remainder interest, to a revocable trust in which only the debtor and Mr. Spreadbury had a beneficial interest during their joint lives.  In July 2008 the children attempted to intervene in the divorce action to assert their interest in the property but were rebuffed by the state court, which ruled that they had to bring a separate action for that purpose.  That same month—and three days before the debtor filed her chapter 11 petition—the children filed suit against the debtor and Mr. Spreadbury in the Fauquier County Circuit Court seeking, among other relief, over $5,000,000 in damages for alleged breach of fiduciary duty.  They also filed probate court proceedings in Connecticut—where the parents' trust was created and where Mr. Spreadbury resides—challenging his and the debtor's administration of the trust.  On April 21, 2009, the Fauquier County Circuit Court stayed the Virginia action in favor of the Connecticut proceedings.  The order of this court that modified the automatic stay to allow the divorce trial to proceed kept the stay in effect with respect to enforcement of any decree for the sale of the property.  In any event, it soon became clear that insurable title could not be passed to a purchaser without resolution of the children's claims.  No ruling had been made in the Connecticut proceedings when the children—who have filed proofs of claim in the debtor's case for $5 million—filed the present action, which essentially mirrors the suit that had been filed in

---

[1] Michelle is the daughter of Mr. Spreadbury by a prior marriage.  Andrew and Kimbel are the debtor's children by a prior marriage.  Whitney is the daughter of the debtor and Mr. Spreadbury.

3

the Fauquier County Circuit Court. All of the parties agree that this court is the most appropriate forum for resolving the dispute.

The basic facts—although certainly not the conclusions to be drawn from them—are not in dispute. This is a tale of three trusts. On September 21, 1990, the debtor and Mr. Spreadbury executed an instrument that created an irrevocable trust formally designated as the Spreadbury Family Trust II, but frequently referred to in the pleadings and briefs as the "children's trust," a shorthand that the court will adopt.[2] The named donors are Mr. Spreadbury, the debtor, and the four children. The trustees are Mr. Spreadbury, the debtor, and two other persons, one of whom has since resigned. Oddly, the only signatures on the trust instrument are those of the trustees, not the donors. The declaration recites that Mr. Spreadbury and the debtor "have each expressed their respective desires to acquire nothing more than a joint and several income interest for a period not to exceed [22 years] in and to the property located in the State of Virginia and more specifically described in Exhibit A annexed hereto." Exhibit A, however, merely states, "To be completed upon receipt of Real Estate and/or other property." The instrument further recites that the children "each desire to acquire (based on the appreciation potential of the property over the period of the joint and several income interest of [Mr. Spreadbury and the debtor] nothing more than a fee remainder interest, as a tenant in common, in and to the property, to take effect upon the expiration of the income interest of [Mr. Spreadbury and the debtor]." Exhibit B to the instrument recites the value of the trust, as of September 1990, to be $1,430,000—evidently the

---

[2] Mr. Spreadbury objects to the characterization of the 1990 trust as the "children's trust" as an oversimplification of its provisions and purpose. While that may be so, the label is nevertheless a convenient one which the court will use solely to avoid the awkwardness of referring to the two trusts by their dates or formal titles. Of course, what controls is not the shorthand designation but the actual terms of the trust.

4

purchase price of Westbury Farm—and shows the present value of Mr. Spreadbury's and the debtor's income interest as $630,344 (or 44.08%) each and the present value of each child's "1/4 contingent remainder interest, as tenant in common, to vest in 22 years" as $42,328 (or 2.96%). It is undisputed that each of the children contributed $42,328, with those funds being used to make the down payment on the purchase of Westbury Farm. Under the terms of the trust, the debtor and Mr. Spreadbury were to have an income interest for the shorter of their joint lifetimes, or 22 years, with the remainder vesting in September 2012 in the living children and the issue of any deceased child, although the corpus would continue to be held in trust for their benefit until the youngest living beneficiary attained 50 years of age.[3] Prior to the expiration of their interests, the debtor and Mr. Spreadbury were to bear "all of the expenses, taxes and costs attributable to the joint and survivor income interests." Among other powers, the trustees—"provided they receive adequate consideration in money or money's worth"—were authorized to mortgage, lease ("with or without option to purchase"), and sell any real property held by the trust.

    Actual title to Westbury Farm, as it turns out, was taken in the name of a second trust known as the Spreadbury Realty Trust ("the realty trust") created the same day as the children's trust. Mr. Spreadbury was the sole trustee of the realty trust, and the beneficiary of the realty trust was the children's trust. A letter sent to Mr. Spreadbury and the debtor several years later by the attorney who drafted their estate plan explained the goal of the arrangement as follows:

> Each of these trusts was executed in connection with your purchase of the
> property in Virginia. . . . The Spreadbury Realty Trust is of no real significance.

---

[3] Based on the birth dates recited in the instrument, Whitney Weston Spreadbury is the youngest, and she will not turn 50 until 2028.

> This is a nominee trust which merely holds legal title to the property. The real owner is the Spreadbury Family Trust - II. . . . The purpose of establishing this trust was to provide for the purchase of the Virginia property, while at the same time, providing a mechanism for excluding the value of that property from your estate. In effect, Peter and Diane acquired a right to use and occupy the property for a period ending upon the <u>earlier</u> to occur of the death of both of them or 22 years. Upon the earlier to occur of either events, the property will be owned one quarter by Michelle, one quarter by Kathryn, one quarter by Andrew and one quarter by Whitney. Thus, this property will not be includable in the estate of either Peter or Diane. If Peter and Diane desire to acquire title to the property (i.e., the remainder interest of all of the parties) they can do so by purchase. In that event, although the property will be includable in their estates, their estates will be reduced by the amount paid to acquire the remainder interest.

The letter recommended that the trust should be "monitored" and that "consideration should be given to the potential acquisition of the remainder interest prior to the expiration of the 22-year remainder period."

The complaint focuses on events that occurred in the period from 1998 to 2003. On January 1, 1998, the realty trust—with the consent of Peter Spreadbury and the debtor as trustees of the children's trust—entered into a lease and purchase option for Westbury Farm with still a third trust, known formally as The Peter E. Spreadbury and Diane C. Spreadbury Trust – 1986, but which is sometimes referred to in the pleadings and briefs as the parents' trust. This trust was created, at least on paper, on April 20, 1987, and the beneficiaries are Mr. Spreadbury and the debtor during their joint lifetimes. The lease to the parents' trust was for a term of 99 years at $1.00 per year, and the option allowed the trust to purchase the property for $1,750,000 at any time.[4] The purchase option was exercised in August 1999, at which time the parents' trust

---

[4] Although the record is not developed, it appears, from the letter ruling in the divorce case, that the 12,000 square foot stone mansion currently on the property was constructed in 1998—the same year as the lease and purchase option—using the proceeds from the sale of a residence in Connecticut.

6

executed in favor of the children's trust a $340,000 promissory note bearing interest at 7%, payable in annual installments of interest only, with the principal due and payable in 30 years. There is no evidence in the record as to how the amount of the note was determined. Although the note recites that it was to be secured by a deed of trust, no deed of trust has ever been recorded, nor have any payments ever been made on the note. The beneficiary of the realty trust was changed from the children's trust to the parents' trust with the consent of Mr. Spreadbury and the debtor as trustees of the children's trust. On November 19, 2003, Mr. Spreadbury, as trustee of the realty trust, executed a deed conveying the property directly into the name of the parents' trust, which is the current owner of record.[5] It is alleged, and not denied, that the children had no knowledge of, and were not asked to consent to, the 99-year lease, the purchase option, or the change in the beneficiary of the realty trust.

The complaint before the court was filed on August 31, 2009. After a detailed recitation of the events that ultimately resulted in the conveyance of Westbury Farm to the parents' trust, the complaint asserts that the debtor and Mr. Spreadbury, in their capacity as trustees of the children's trust, engaged in self-dealing and breached their fiduciary duty to the children by (1) consenting to the 99-year ground lease and purchase option in favor of the parents' trust; (2) exercising the purchase option in favor of the parents' trust and giving the children's trust an unsecured $340,000 promissory note on which no payments have ever been made in exchange for its interest in the property; (3) changing the beneficiary of the realty trust from the children's trust to the parents' trust; (4) accepting the $340,000 promissory note as adequate compensation

---

[5] Contemporaneously with the transfer of title, the debtor and Mr. Spreadbury placed against the property the $1,000,000 deed of trust that is reflected on the debtor's schedules.

for the children's interest in the property; and (5) by conveying title to the property from the realty trust to the parents' trust. In response, Mr. Spreadbury filed the motion to dismiss, or in the alternative, for summary judgment, that is presently before the court.[6]

Discussion

I.

A complaint may be dismissed at the outset of litigation if it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012. As the Supreme Court has cautioned, however, "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In evaluating a motion to dismiss for failure to state a claim for relief, the allegations of the complaint must be construed favorably to the pleader. *Id.* At the same time, the plaintiff must provide grounds for entitlement to relief, which requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Put another way, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

---

[6] Although the debtor is formally a defendant to the action, in reality she supports the children's position.

If matters outside the complaint are presented to and not excluded by the court, the motion is treated as one for summary judgment. Fed.R.Civ.P. 12(b); Fed.R.Bankr.P. 7012(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. In ruling on motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

II.

The motion to dismiss or grant summary judgment asserts that each of the actions taken by Peter Spreadbury and the debtor were not only authorized by the applicable trust instruments but were specifically foreseen in 1990 when Westbury Farm was purchased. According to the motion, it is implausible that the debtor and Mr. Spreadbury, in exchange for a cash contribution in 1990 of 12% of the purchase price, embarked on a plan under which they would be responsible for 88% of the purchase price and would pay all carrying costs (including taxes and mortgage payments), not to mention the cost of constructing a 22-room mansion on the property, only to have the children become the owners of the property in September 2012.

As Mr. Spreadbury's counsel candidly acknowledged at oral argument, much of the difficulty in determining what interest the children have arises from an apparent disconnect between the first page of the trust instrument and the remaining 35 pages. The letter from the drafting attorney, far from resolving the issue, raises its own questions. Most significantly, the declaration recites that the children desired "to acquire (based upon the appreciation potential of

9

the Property) . . . a *fee remainder interest* in and to the Property to take effect upon the expiration of the income interest of [the debtor and Mr. Spreadbury" (emphasis added), while what they would actually receive, if one reads only the remaining pages, is not fee simple title at all but a beneficial interest that would continue to be held in trust until the youngest of the living children attained 50 years of age.  The characterization in Exhibit B of the children's remainder interests as "contingent" is not repeated anywhere else in the declaration, and the only apparent contingency is the requirement that a remainder beneficiary either be alive or have surviving issue at the time the income interest terminates.  Although the attorney who drafted the trust opined that the debtor and Mr. Spreadbury would have the ability, prior to the expiration of the 22-year income period, "to acquire title to the property (i.e., the remainder interest of all of the parties) . . . by purchase," nothing in the declaration specifically addresses such a possibility or, more crucially, provides a formula for the price (if not determined by negotiation) to be paid to acquire the remainder interests.  It is true that the declaration gives the trustees broad powers to lease or sell any real property held by the trust; however. it does not specifically authorize self-dealing.  And, as noted, the declaration is not signed by the four children, even though they are named as grantors.

Having carefully considered the arguments made by Mr. Spreadbury, the court is unable to conclude that the children have failed to state a claim for relief.  At the very least, under the maxim that equity will treat as done that which ought to have been done, the children have stated a plausible claim for the imposition of a constructive trust on any sales proceeds, superior to the interest of Mr. Spreadbury and the debtor, with respect to the $340,000 promissory note given to the children's trust in exchange for the children's remainder interest.  Indeed, depending on the

value of the remainder interest at the time Mr. Spreadbury and the debtor consented in 1999 to the beneficiary change of the realty trust, they might be entitled to more.  In any event, since the plaintiffs, in the court's opinion, have sufficiently stated a claim for at least some relief, the court need not determine under what circumstances they might be entitled to some greater relief than imposition of a constructive trust against the sales proceeds.  Much might depend, for example, on their knowledge, or lack of knowledge, of the underlying estate-planning goals that the trust was intended to accomplish as well as their knowledge, if any, concerning future improvements the debtor and Mr. Spreadbury planned to make to the property.  Given the traditional flexibility accorded a court of equity to protect the beneficiaries of a trust, any further determination of remedies is appropriately deferred until the record is fully developed.

      A separate order will be entered denying the motion to dismiss or, in the alternative, grant summary judgment.

Date: _____                _____
                                                 Stephen S. Mitchell
Alexandria, Virginia                        United States Bankruptcy Judge

Copies to:

Karen M. Kennedy, Esquire
Karen M. Kennedy & Associates, PLC
P.O. Box 2215
Middleburg, VA 20118
Counsel for the plaintiffs

Frederick H. Kruck, Jr., Esquire
Law Office of Frederick H. Kruck, Jr. PC
7551 Foxview Drive
Warrenton, VA 20186
Counsel for defendant Peter Spreadbury

Kenneth Michael Misken, Esquire
McGuireWoods LLP
1750 Tysons Blvd.
McLean, VA 22102
Counsel for defendant Diane Cheryl Spreadbury

John F. McGinley, Jr., Esquire
McGinley, Elsberg & Hutcheson, P.L.C.
627 South Washington Street
Alexandria, VA 22314
Chapter 11 trustee